## MARYLAND CASUALTY CO. v. GLAS-SELL–TAYLOR & ROBINSON et al.

### Civil Action No. 1494.

District Court, W. D. Louisiana, Lake Charles Division.

Aug. 22, 1945.

Rosen, Kammer, Wolff, Hopkins & Burke, of New Orleans, La., and Kaufman & Anderson, of Lake Charles, La., for plaintiff.

Thos. F. Porter, McCoy & King, Plauche & Plauche, J. E. Bass, Moss & Graham, and Cline, Thompson, Lawes & Cavanaugh, all of Lake Charles, La., Montgomery, Fenner & Brown, of New Orleans, La., and Herold, Cousin '& Herold, of Shreveport, La., for defendants.

830

DAWKINS, District Judge.

The bill of complaint in this case filed May 14, 1945, invokes relief under the interpleader statute, as amended by the Act of January 20, 1936, c. 13, 49 Stat. 1096, 28 U.S.C.A. § 41(26), and rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing for declaratory judgments. The defendants are Glassell-Taylor and Robinson (hereafter called Glassell et al), a partnership, sub-contractors, John W. Harris Associates, Inc. (hereafter called Harris Associates), principal contractors, and some eight corporations and individuals alleged to have furnished labor and material on a construction job undertaken for Cities Service Refining Corporation, as owner in the Parish of Calcasieu, La. The petition alleges that plaintiff, as surety for Glassell et al., executed in favor of Harris Associates, a bond in the sum of $595,000, to protect the said obligee against loss by the failure of the obligors, the said Glassell et al. to faithfully perform its sub-contract, said bond containing the unusual provision: "that no right of action shall accrue upon or by reason hereof, to or for the use or benefit of anyone other than the obligee herein named." Further, that on November 29, 1944, the said contractor and obligee in the bond, Harris Associates, claiming that Glassell et al. had defaulted on their contracts, had "ousted said partnership from the work, which was being done and performed * * * and took possession of the work * * *."

It further alleged that the following suits had been filed:

(1) In the United States District Court for the Eastern District of Louisiana by Harris Associates, against Glassell et al. and its individual partners, Ashton Glassell, Jay W. Taylor and J. P. Robinson, as well as the present plaintiff, Maryland Casualty Co., bearing No. 1032 on the civil docket of said court, claiming damages against the said defendants in the sum of $1,056,502.81, and praying judgment against plaintiff in the present case for the full amount of its bond of $595,000.

(2) By Paul E. Workman (hereafter called Workman) in the 14th District Court for the Parish of Calcasieu, La., against Glassell et al., and the present plaintiff, Maryland, as surety, bearing No. 23,715 on the docket of said court and alleging that defendants therein were indebted to him in the total amount of $109,912.92.

(3) By H. N. Mitchell (hereafter called Mitchell), doing business as the Beaumont Construction Company, also in the District Court for Calcasieu Parish, La., against Workman and Maryland, bearing docket No. 23,715, for the sum of $3,450.

(4) By McWane Cast Iron Pipe Co. (hereafter called McWane) against Workman and Maryland for the sum of $5952.85.

Petitioner further alleged that five additional claims had been made by other persons, which it made defendants in the present suit, giving names and amounts, but as to which it did not allege suit had been filed.

The petition denied liability to any and all said defendants, but alleged that the claims grew out of "some housing project"; that said defendants are adverse claimants, citizens of different states, and all "residents of states other than the state of which plaintiff is a citizen, entitling plaintiff to relief in the form of a declaratory decree, under the provisions of Sec. 274(d) as amended, U.S.C.A. T. 28, Sec. 400"; and that unless the relief sought is granted it will suffer irreparable injury.

Plaintiff prayed for a declaratory judgment that the said bond is not a statutory bond, but the obligee therein, Harris Associates, alone has the right to sue thereon; and if the court should hold otherwise, then the defendants should be "required to interplead and settle between themselves their right to the money so found to be due"; that the petitioner have judgment against its principals, Glassell et al. for whatever amount is recovered against it in favor of other defendants; and that all defendants be enjoined from further action in any other court.

On the filing of its petition plaintiff tendered and the court ordered filed for the benefit of cliamants against the original bond executed by it, another bond with other recognized companies as sureties, for the said sum of $595,000, in lieu of cash, and at the same time issued a restraining order against further prosecution of suits in other jurisdictions pending action herein. This restraining order has been and is still continued in force.

The rule to show cause why a preliminary injunction should not issue was heard on June 9, 1945. At that time motions to dismiss were filed by the defendants, Workman, W. S. Dickey and Clay Manufacturing Co., while answers to the rule were filed by Hydraulic Development Corpora-

tion and McWane. There was also filed a letter from Richard B. Montgomery, Jr., as attorney for Harris Associates and Maplewood Nos. 1 and 2, stating: "I believe the Maryland Casualty Company is entitled to the relief prayed for insofar as the request for a temporary restraining order is concerned."

The plaintiff herein, Maryland, in support of its application for preliminary injunction, filed in evidence documents marked "Maryland I, Maryland II, Maryland III and Maryland IV".

"Maryland I" is an exception by Maryland to the suit filed by Workman in the state court of Calcasieu Parish, La., pleading that the petition disclosed no cause or right of action against it.

"Maryland II" is an affidavit by the assistant manager of the New Orleans claims division of Maryland, that it had been served with notice of some five claims, upon which suit had not been filed.

"Maryland III" is a certificate by the counsel for the present defendant as to notice of the hearing, its postponement, and subsequent re-setting.

"Maryland IV" is also an affidavit by counsel for the present plaintiff, listing the other actions that had been instituted against Glassell-Taylor and *Young* (the last named instead of Robinson), and the individual members of said partnership (being the same as in the case of Glassell-Taylor and Robinson, to-wit: Ashton Glassell, Jay W. Taylor and J. P. Robinson), and against the present plaintiff as surety on the bond, in favor of Harris Associates, dated August 14, 1943, and which names are the same as those enumerated in plaintiff's petition in the case in this court. Attached to "Maryland IV" are copies of pleadings in other courts as follows:

(1) "Exhibit A" being the suit by Harris Associates against Glassell et al. and Maryland, as surety, filed in the United States District Court for the Eastern District of Louisiana, and bearing No. 1023 on its docket, demanding the suit of $1,056,502.81 against Glassell, et al. and $595,000 against Maryland, as surety, in solido, as for breach of contract.

(2) "Exhibit B," a bill of complaint by Workman filed in the state court for Calcasieu Parish, La., against Glassell et al., Harris Associates, Cities Service, Maplewood Nos. 1 and 2, and Maryland, praying for judgment in solido against all said de-

fendants for the two items claimed to be due under Workman's sub-contract with Glassell et al., aggregating $109,912.92, and for the recognition of an alleged lien upon the premises. Workman further prayed as follows:

"Your petitioner further prays that all of the persons, firms and corporations named in paragraph XLV of this petition each be served with a copy of this petition and cited to appear herein and be required to assert such claim as they might have against the said lands and improvements, buildings, constructions and installations thereon, and that the claims of all of the parties in this suit be tried in concursus."

He also prayed for the sum of $1500 and attorneys' fees and for trial by jury. Upon this petition was entered an order by the state court appointing curators for nonresidents and directing trial by jury, upon petitioners providing bond in favor of the parish to cover costs of jury.

(3) "Exhibit C." A suit by Mitchell in the state court of Calcasieu Parish against Workman, Glassell et al., Harris Associates, Cities Service, Maplewood Nos. 1 and 2, and Globe Indemnity Co. in the sum of $3450, for the rental of a "trenching machine" and attorneys' fees.

(4) "Exhibit D." Suit of McWane against Workman for the sum of $15,343.-37, filed in the state court of Calcasieu Parish, in which jurisdiction was obtained through writ of attachment and service on a curator ad hoc, and in which the claim of Workman for the sum of $111,145.46, above referred to, against Glassell et al., Maryland, Harris Associates, Cities Service, Maplewood Nos. 1 and 2, was seized. McWane alleges that "said claim is secured by a lien and privilege upon lands and improvements thereon, now belonging to" Maplewood Nos. 1 and 2, and prays that the judgment against Workman "be in rem but have no further effect than the property herein attached." The attachment was issued and the claim seized by the sheriff, who described it as secured by lien on certain real estate.

### Opinion.

The present case was submitted, first, upon the motions to dismiss by Workman and by W. S. Dickey Clay Manufacturing Co. (hereafter called Dickey), and second, the application for the preliminary injunction of the plaintiff.

It is necessary, of course, to dispose of the motions to dismiss before determining the right to the preliminary injunction.

Taking up first Workman's motion, we find that it alleges want of jurisdiction, based upon some eleven separately enumerated grounds, to-wit:

(1) That only two of the defendants are residents of this district;

(2) As to these two, plaintiff "admits no liability" but "seeks a declaratory judgment with respect to certain nonliability, while asserting jurisdiction for its bill of interpleader or bill in the nature of interpleader upon the residence of those same two defendants only";

(3) That plaintiff "is authorized to do and is doing business in the state of Louisiana" and its bond was given in connection with work done in this state, for which reasons plaintiff has "subjected itself to the jurisdiction" of the state court, and hence there is no diversity of citizenship between plaintiff and those two residents of Louisiana";

(4) That plaintiff is not a stake-holder without interest;

(5) That the amount in controversy between plaintiff and those two residents of Louisiana is less than $3000;

(6) That the petition affirmatively "shows no liability to anyone other than" Harris Associates, "a corporate citizen of Delaware";

(7) That the complaint affirmatively shows that the bond was given in connection with "construction of housing projects in Calcasieu Parish" by a private owner, and "that all the rights and liabilities of the various parties * * * owners, principal contractor, sub-contractors, furnishers of service, labor and materials and the surety on the bond of any of the parties, including plaintiff herein, are prescribed by Act 298 of the Legislature of Louisiana for the year 1926, as amended, which creates liens on property upon which said construction is done, provides the manner in which said liens are preserved, creates causes of action against the owners of said property under certain circumstances and prescribes the liability of any surety * * * and that said surety shall be bound to the same extent as the contractor or other person undertaking said work"; and that the present action does not affirmatively seek to interplead any owner or owners for whom said housing project was constructed * * *";

(8) That the "present action was filed on May 14, 1945; that on April 4, 1945," Workman had filed in the state court for Calcasieu Parish "a concursus proceeding, * * * citing the owners, the general contractor and all claimants by whom any claims had been filed, and Maryland as surety * * * to have all of said parties assert their respective claims to be tried in concursus, as provided by said state statute, which said concursus proceeding was designed for the purpose of preventing a multiplicity of suits to the same extent and for the same purpose as a bill of interpleader or a bill in the nature of an interpleader in the Federal Courts * * *"; that no other person, including plaintiff, had "filed any petition in said state court for concursus proceeding," and that Maryland had thereby subjected itself to the separate suits declared on in its complaint; that this present action in the Federal Court "is a creation of equity and that the equitable jurisdiction of this court does not properly attach where the identical and complete relief sought in this court is otherwise obtainable, particularly where the same relief is obtainable under a state concursus proceeding, previously filed in the state court; where the jurisdiction of the entire subject was first obtained, and wherein Maryland * * * was cited as a party on April 9, 1945," and for which reasons there is want of equity and a lack of jurisdiction;

(9) That Workman asserts a solidary liability against Maryland and others in said concursus proceeding, some of whom are not parties to the present action, and a lien on the property upon which the construction work was done, as well as a personal judgment against some of the parties, who are likewise not parties to the present suit, and which can not properly be adjudicated here; and that if this suit is not dismissed, the mover, Workman, and other claimants in a similar situation, "under the guise of preventing a multiplicity of suits for one party," Maryland, "* * * will be required to litigate this Federal action" with Maryland "* * * alone and the said action against all the other parties to said concursus (in the state court) except Maryland * * * and present in both actions the same evidence and thereby be subjected to a multiplicity of suits

and the double expense of prosecuting their claims and demands";

(10) That in the said concursus proceeding Maryland had been cited and proceedings had therein as follows:

(a) It was cited April 9, 1945, (b) that on April 19, 1945, it had obtained consent of attorneys for Workman for an extension of time within which to plead, until May 9, 1945, (c) that on May 9th following, it had filed a motion for security for costs, (d) that on the same day it had filed a prayer for and obtained an order for oyer of the bond sued on therein, (e) that on May 24, 1924, counsel for Maryland and Workman had filed a "general stipulation and obtained" an order for the disposition of the motion for security for costs and (f) on the same day, Maryland filed exceptions of "no right or cause of action and of non-joinder in said concursus proceeding"; that some of the pleadings in the state court were filed before and others after the present suit had been filed, thereby evidencing a complete want of equity herein and a want of jurisdiction, and, finally, that the matter of taking or declining jurisdiction herein addresses itself to the discretion of this court based upon the "high principles of equity and equitable considerations," and in view of the circumstances of this case, including the previous institution of the concursus proceeding in the state court by Workman and the laches and failure of said Maryland to timely avail itself of the right to file a similar concursus in the state court, or to file this present action in the Federal Court before jurisdiction was obtained in the state court on the same subject matter, shows want of equity and therefore of jurisdiction.

The motion to dismiss by Dickey Clay Manufacturing Co. was based upon substantially the same grounds.

The contract for the performance of which the bond of Maryland, plaintiff herein, was given, was executed by Harris Associates (general contractor), "in virtue of its contract with said Cities Service Refining Corporation, owner," with Glassell et al. "to perform all the work, furnish all the labor and material" necessary for:

"(1) Installation complete of the water distribution system

"(2) Installation of sewerage collection system

"(3) Construction of roadways and roadway drainage for and at the housing project of the owner."

Copy of this contract was attached to and made part of the bond of Maryland, which is the subject of this interpleader proceeding. The bond was in favor of Harris Associates, as stated, "acting in virtue of its contract with * * *, the owner, * * *," and had as its purpose the protection of the obligees against claims for labor, material, and by sub-contractors of the obligor.

The Act 298 of the Legislature of 1926 provides (in Sec. 2) that: "The owner of such work shall require of such undertaker, contractor, [etc.] a bond with good and solvent surety * * *", and (Sec. 3) "Where the owner has required the bond herein provided, the said surety thereon shall be liable in solido with the contractor for all labor and materials used in said work * * * as to which labor and materials said surety shall be bound to the same extent as the said contractor * * * undertaking such work"; (Sec. 6) "In all cases where a surety has been furnished, as between such surety and any claimant for labor or material or any subcontractor * * * the surety shall be entitled to make only the same defense as the contractor for whom he signed as surety is authorized to make * * *"; (Sec. 7) "Failure of the owner * * * to obtain a *sufficient* bond shall not release the surety as to the owner * * * nor shall such failure deprive any claimant" under the terms of this Act of his rights against the surety * * *"; (Italics by the Court.)

Section 14 provides:

"* * * provided, however, that before any suit is instituted against the surety prior to the registry by the owner of his acceptance of the work, or of the notice of default, such claimant shall record his claim as provided in Section 2 hereof, and shall serve a copy of said claim, in the form and in the manner prescribed in Section 2 hereof, or (on) both the owner and the surety and provided that no suit shall be filed against the surety until thirty days after such service. Any action against the surety must be brought within one year from the registry of acceptance of the work or of notice of default of the contractor. * * *"

Referring back to Section 4 of the Act, we find it provides the procedure where

unpaid claims by laborers, material men, sub-contractors, etc., are made and it is quoted in full:

"Section 4. If, at the expiration of said thirty days, there are such recorded claims, filed as aforesaid, the owner or any other interested person, *may* file a petition in a court of competent jurisdiction, citing all claimants, including the undertaker, contractor, master-mechanic, engineer or sub-contractor, against or by any of whom said claims are filed, *and also the surety on the bond,* and therein shall assert whatever claim he has against any and all of them, *and shall require said claimants to assert their respective claims; and all of said claims shall be tried in concursus.* When the concursus is provoked by a party other than the owner, the owner shall be made one of the defendants. In the event that the owner has claims in concursus with the other claimants who have a lien and privilege on his property under the provisions of this act, the cost of completing the building or other work by reason of the default of the original contractor, when established to the satisfaction of the court and when paid for by the owner, shall be reimbursed to him by preference out of any balance which might have been due under the contract if completed by the contractor; but the owner shall have no claim for the excess in the cost of completion if such cost exceeds the amount of said balance, or for any other of his claims against the surety on the bond of the contractor until all other claimants have been paid in full. When the owner files a concursus proceeding he must deposit in court whatever funds, if any, remain in his hands after paying the costs of completing the building, if he was compelled to complete it by reason of the default of the contractor, but any claimant shall have the right to show in that suit or other appropriate proceeding that the amount claimed to have been paid by the owner for such completion was not really paid or that work done was not covered by the original contract, and pending the trial of such issue the liens and privileges herein given to sub-contractors and others shall remain in full force and effect." (Emphasis by the Court.)

■ While it is true that the court will not at this time fully determine the question of plaintiff's liability to suit by persons other than the obligee under terms of the bond, which is the subject matter of this action, it is deemed necessary to quote and discuss these provisions for the purpose of illustrating the complications which would arise in an attempt to settle them in the present proceeding. Both as to Harris Associates, as the representative of the owner of the Cities Service, as well as all claimants for material, labor, sub-contractors, etc., before the court, it would be difficult, if not impossible, to decide the question of that liability, until it had been ascertained in some appropriate proceeding just how much the owner or its agent could demand from plaintiff, since the statute subordinates the owner's claim to any balance that may be due after completion of the work out of the construction price as well as upon the bond, to those of laborers, material men, etc. Then, too, the Act itself declares the liability of the surety and purports to give said claimants a right of action even though the bond be "not sufficient." Of course, it may be argued that this means "not sufficient" in amount, but that is an issue as to the determination of which this court would be bound by the decisions of the State tribunals, and to enjoin the State court from deciding that liability in concursus proceedings, along with all other complicated issues that will necessarily arise, would be to take from it the possibility of disposing of one of the most important phases of the litigation now pending before it.

■ The very purpose of the Federal interpleader statute was to protect against a multiplicity of suits and possible double liability to two or more persons whose claims might exceed the total obligation. If, before, or at the time of filing in a Federal Court, there has been instituted in a state court a concursus proceeding under said law, involving other persons, claims and demands, which it is necessary to determine in one action, and some of which will not or can not be decided in an interpleader suit in a Federal court, it would be both awkward and inequitable to attempt a determination of the surety's rights and only part of those of claimants in the state court. If this Act does not give all the claimants for labor, material, sub-contractors, contractors, etc., a right of action against the present bond or if there is a serious issue on the bond, I do not see how this court could decide the matter without having all the parties before it.

■ Counsel for plaintiff contends that it can not be protected in the state court

against suits filed in other courts, particularly against the one by Harris Associates, instituted in the United States Court for the Eastern District of Louisiana. He relies on the clause of Sec. 14 of the Act of 1926, quoted above, to the effect that "nothing in this Act shall be so construed as to deprive any claimant of his right of action against the surety signing any bond * * * which right of action * * * shall accrue at any time after maturity of the claim of the said claimant * * *." It also relies, for support of that position, on the cases of Levingston Supply Co. v. American Employers Ins. Co., La.App., 198 So. 416; and Central Lumber Co. v. American Employers Ins. Co., La.App., 15 So.2d 229, both by Judge LeBlanc of the First Circuit Court of Appeals (one of the intermediate appellate courts of this state). However, a careful examination of these cases and others of the State Courts, would seem to support the proposition, that if timely filed, and there are many claims, a concursus proceeding in the State Court does protect those made parties thereto against the harassment of suits in other courts. In the first case relied on plaintiff held a claim against the contractor for plumbing material and labor, which was recorded on October 6, 1939. Various other claims were filed, one eventuating in a companion suit which was decided on the same day and styled Baton Rouge Sash & Door Co. v. Spedale et al., La.App. 198 So. 420. On November 17th, Levingston Supply Co. made demand for payment on the contractor and surety, which they ignored. Thereafter, on December 19th, suit was filed against the surety. Prior thereto on December 8th, the owner had filed a concursus proceeding in the same court, showing that he had made payments of $3240 on the total contract price of $3600, leaving a balance of $360 or 10 per cent retained in accordance with the provisions of the contract, and which he tendered in the concursus, wherein the contractor and surety were made parties. Levingston appeared in the concursus on December 21st, "which was the day before the defendants (Surety Company) was served in the present suit," and on which day "a note of evidence was taken in the concursus proceeding, and on motion of counsel, judgment was rendered and signed, releasing the owner from further liability other than the amount deposited by it and cancelling the liens recorded against the property." In the Levingston independent suit the surety company filed exceptions of no cause or right of action and prematurity. The grounds of the said exception of prematurity were that other claims and liens had been filed "against the property of the owner * * * and its surety * * * and any claim the plaintiff may have against defendant (surety) can be asserted only in" the concursus proceeding previously filed by the owner and pending before the same court. The exceptions were overruled and the record showed no other pleadings. The case was treated by both sides as having been disposed of by the rulings on the exceptions. There was judgment for plaintiff as prayed for with ten per cent attorneys' fees. The amount of plaintiff's claim was not disputed and only a question of law was presented. The court discussed and contrasted the provisions of the Public Buildings Act 224 of 1918, as amended by Act 271 of 1926 with the Private Buildings Act No. 298 of the same year, the latter being involved in the present case. It pointed out that in the former, section 4, the language read that the authorities representing the public, "*shall* file a petition in the proper court" provoking a concursus; whereas in the latter or Private Buildings Act, the "owner or any other interested person, *may* file" such a proceeding. For this reason, it was said that under the Public Works Act, the filing of the concursus was mandatory, whereas in the Private Works Act, "it is only permissive on the part of any of the interested parties." [198 So. 418] Judge LeBlanc then proceeded to state that he did not think the difference between the two statutes would be questioned "[but] for the language used in the decision of the Supreme Court in the case of American Creosote Works v. Olivier & Son, 175 La. 651, 144 So. 136." The Supreme Court in this latter case had said that "the language of both (The Public and Private Property Acts), relating to a concursus proceeding, is practically the same," but Judge LeBlanc called attention to the fact that the case decided by the Supreme Court arose under the Public Works Act No. 271 of 1926, and in effect concluded that what that court had said was obiter. We quote from the Levingston case by Judge LeBlanc, at page 419 of 198 So., as follows:

"At this point it may be important to observe that under Section 14 of Act 298 of 1926, any claimant is given a particular right of action against the surety and the contractor, and nothing in the act itself

shall be so construed as to deprive him of such right. In the case of American Creosote Works, Inc. v. P. Olivier & Son, Inc., et al., supra, that section of the act was called to the court's attention, the plaintiff having relied on it in support of its claim that it had a right to bring a separate action. Notwithstanding the fact, as we have stated, that the case involved an interpretation of the provision of the Public Works Act, Act 224 of 1918, the court nevertheless gave consideration to the plaintiff's pretensions and claims under Section 14 of Act 298 of 1926 and stated that all sections of that act had to be construed together, and with that principle in mind, it had to be held that the language of the statute cited by the plaintiff applied in cases where there were no claims against the work."

It is thus conceded that while the Supreme Court in adopting and quoting the opinion by the Judge of the district court had said that the provision in the Private Buildings Act was "practically the same" as the Public Building Act, Judge LeBlanc thought this unnecessary to a decision of that case, and in the subsequent one of Central Lumber Co., supra, he stuck to that conclusion. However, in the latter he also cited Dixie Bldg. Material Co. v. Mertz, 19 La.App. 881, 141 So. 791, by the Court of Appeals for Orleans Parish. The following is quoted from the Central Lumber Co. v. American Employers Ins. Co., 15 So.2d at page 231, as follows:

"Notwithstanding the fact that the surety has bound himself for a certain specific amount, he contends that if there are several suits filed against him it may well be that in the final outcome, by reason of the amount of the bonds he would have to furnish to take suspensive appeals from the several judgments rendered against him, he might be forced to pay on all of said bonds, a sum largely in excess of the amount for which he had become bound. Assuming the possibility of such a situation arising, it would seem that the answer which would suggest itself to the dilemma in which counsel states the surety company might be found, would be this: Let the surety himself institute and convoke the concursus if nobody else does. He is certainly a party interested and under section 4 of the Act has the undoubted right to convoke it and have all claimants cited to appear and assert whatever claims they have, to the end that they may all be tried together. Indeed, that is the very procedure which seems to be suggested by the court in the case of Dixie Bldg. Material Co. v. Mertz, 19 La.App. 881, 141 So. 791, 792. In that case the surety company also contended that it would be inequitable, because of the laches of the plaintiff, to hold it for an amount in excess of the amount of its bond where it had acted in good faith and had paid the full amount of its obligation. 'The fallacy in this argument', stated the court, 'is that section 4 of Act No. 298 of 1926 provides the procedure and method by which the surety on a building contract bond can protect itself against paying any more than the amount of the bond by convoking concursus proceedings. Defendant failed to exercise its clear statutory rights, and its equitable plea is therefore without merit.' Furthermore in the case presently before us it would appear that this was the only suit that had been filed against the surety company. It was filed on July 7, 1942 and put at issue by the defendant by the answer filed. What was there to prevent it from doing, at that time, what it thought proper to do on November 28, 1942, when it did convoke the concursus? By its action in doing so it certainly forestalled the danger which counsel now seems to be so apprehensive about. On that point of the case we are convinced that the decision of the trial judge is correct."

In the Dixie Building Co. case, supra, the Surety Company had paid such claims as had been filed, and the balance due under the bond was paid by it to the owner. The statute gives a claimant one year in which to sue on the bond and it was held in substance that, by failing to provoke a concursus and having paid the balance due under the bond, on which claimants had a superior right to the owner, the surety could not escape liability in that suit to the only remaining claimant on the bond.

In view of this uncertainty and what appears to be a conflict between the decisions of the Court of Appeals of the First Circuit with that of the Supreme Court and the Court of Appeals for the Parish of Orleans, I believe it is my duty to construe, at least tentatively, for the purpose of disposing of the motion to dismiss herein upon equitable grounds, Act 298 of 1926. As stated by Judge Porter and approved by the Supreme Court in the American Creosote Works case, supra [175 La. 651, 144 So. 138], I think, "all sec-

tions of this Act must be construed together * * *." In doing so, while it is true it provides that if, after the expiration of thirty days there are recorded claims, "the owner or any other interested person, *may* file" a concursus proceeding, the subsequent clause provides that whoever files the same *"shall* assert whatever claim he has against any and all of them (the other claimants, owners and contractor, sub-contractor, etc.), and *shall require* said claimants to assert their respective claims; and all of said claims *shall be* tried in concursus." This section also requires that "when the concursus is provoked by a party other than the owner, the owner shall be made one of the defendants." This is undoubtedly because of another provision in the same section that the owner's rights against the bond are subordinated to those of laborers, furnishers of supplies, contractor, sub-contractor, etc., and if insufficient to pay all, he, the owner, must suffer, because in the first place, he determined the amount of the bond which would be exacted. Not only that, but he is required, when he files the proceeding to deposit in court whatever funds may be due the contractor.

█ My view is that when it is said in Section 4 that "if, at the expiration of said thirty days," claims have been filed, "any other interested person *may*" file a concursus, the purpose is to accord each of those persons this privilege and the use of that word was more appropriate than to say that all of those named "shall" file such a proceeding. If *shall* had been used it might have been construed that *all* the claimants should join in the petition. It seems that the Legislature simply meant, that if the owner, contractor or surety, persons, who ordinarily would file such an action, did not do so, this should not deprive any claimant of the right to sue the surety on its bond. If this were not so, the Act could be ignored and all claimants at any time could file separate suits against the owner, the surety, or both as they chose, and thereby defeat the salutary purpose of the Act, which was, because of the conflicting claims, liens and involved relations of the situation, to have them determined in one proceeding where the judgment could be binding and final as to all concerned.

█ All the suits complained of by plaintiff in the present case are filed in the State Court for Calcasieu Parish, except that of Harris Associates against Glassell et al. and Maryland in the District Court of the United States for the Eastern District of Louisiana. Undoubtedly, final judgment rendered as between those parties in the concursus in the state court would be res adjudicata and the remedy appears to be that plaintiff in this case should appear in the Federal Court in New Orleans and ask that court to abate or delay the suit therein, pending final disposition of the concursus at Lake Charles.

█ My conclusion, solely for the purpose of disposing of this motion to dismiss, is that the Act 298 of 1926 makes the surety on a bond, given to secure parties to a written building contract, subject to suit by any of the persons for whose benefit it is required, regardless of a stipulation to the contrary in the bond, Miller v. Bonner, 163 La. 332, 111 So. 776, and further, that it would be impossible in this proceeding to do the same full and complete justice between all interested and necessary parties, which can be accorded in the concursus proceeding in the State Court. The latter partakes of the nature of both an action in rem and in personam. Certainly, as to whatever is due by the owner as to the bond, it is a litigation over a particular fund and obligation as to which the State Court had already acquired jurisdiction. Seal v. Gano, 160 La. 636, 107 So. 473.

The motions to dismiss should therefore be sustained.

Proper decree should be presented.