MARYLAND CASUALTY CO. v. GLAS-
SELL–TAYLOR & ROBINSON et al.

No. 11583.

Circuit Court of Appeals, Fifth Circuit.

July 9, 1946.

[5] Hereinafter called Rutherford.

520

Alfred C. Kammer, of New Orleans, La., and Norman F. Anderson, of Lake Charles, La., for appellant.

Clement M. Moss, Alvin O. King, and A. B. Cavanaugh, all of Lake Charles, La., Sidney L. Herold, Harry V. Booth, and Whitfield Jack, all of Shreveport, La., and Richard B. Montgomery, Jr., of New Orleans, La., for appellees.

Before McCORD, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

The complaint in this case is in the nature of a bill of interpleader under Sec. 41(26), Title 28, U.S.C.A. and Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which also seeks a declaratory decree under the provisions of Sec. 400 of Title 28, U.S.C. A. The plaintiff, Maryland Casualty Company [hereinafter referred to as "the Casualty Company"], is a corporation under the laws of Maryland. The defendants are: (a) Glassell-Taylor & Robinson, a partnership, and its co-partners, Ashton Glassell, Jay W. Taylor, and Julio P. Robinson, citizens of the State of Louisiana [which defendants will be referred to as "Glassell"]; (b) John W. Harris Associates, Inc., of Louisiana, a corporation under the laws of Delaware; (c) Paul E. Workman, a citizen of Texas; (d) Krause & Managan, a corporation under the laws of the State of Louisiana; (e) H. N. Mitchell, a citizen of Texas; (f) Mid-Continent Supply Company, a corporation under the laws of Delaware; (g) Hydraulic Development Corporation, a corporation under the laws of Massa-

chusetts; (h) L. M. Ray, a citizen of Louisiana; (i) W. S. Dickey Clay Manufacturing Co., a corporation under the laws of Louisiana; and (j) McWane Cast Iron Pipe Co., a corporation under the laws of Alabama. All of those who were made defendants in the case had either filed suit or had made claims against the plaintiff in the total sum of $1,188,391.81.[1] The amount involved exceeded $3,000. There was the diversity of citizenship between plaintiff and claimants as is required under Rule 22, Federal Rules of Civil Procedure, and Sec. 400, Title 28, U.S.C.A., and as required under Sec. 41 (1) (c), Title 28, U.S.C.A.; there was also the diversity of citizenship between the claimants as is required in an interpleader suit under Sec. 41 (26), Title 28, U.S.C.A.

Plaintiff alleged that on the 28th of May, 1943, Glassell entered into a contract with John W. Harris Associates, Inc., of Louisiana, as the general contractor to do the following: (a) all clearing and grubbing for street rights of way; (b) all clearing and grubbing for rights of way of utility easements; (c) all clearing and thinning required in connection with parks and house sites; (d) all clearing and grub-bing required in connection with the laying of railroad spur and sidings; (e) all excavations and grading for embankment required in connection with the laying of the railroad spur and sidings; and (f) furnishing and installing certain pipe and pipe culverts—all in connection with a housing project at Maplewood, six miles southwest of Lake Charles, Louisiana; that on the 5th day of June, 1943, Glassell entered into another contract with John W. Harris Associates, Inc., of Louisiana, agreeing to do all the work and furnish all the labor and materials for 2900 feet of track, with all required crossties, ballast, and turnouts, etc., on said housing project at Maplewood; that on the 2d day of July, 1943, Glassell entered into another contract with John W. Harris Associates, Inc., of Louisiana, whereby Glassell agreed "to perform all work, furnish all labor and material and finish, in a thoroughly workmanlike manner, under the direction, and to the satisfaction, of John W. Harris Associates, Inc. of Louisiana, the General Contractor, and Walker and Gilette, the Consulting Architect, and Cities Service Refining Corporation, the Owner, for the installation of a water distribution system, a sewerage col-

---

[1] The complaint alleges that the following suits had been filed against the plaintiff:

(1) John W. Harris Associates, Inc., of Louisiana v. Glassell-Taylor-Robinson and Maryland Casualty Company, in the United States District Court for the Eastern District of Louisiana, at New Orleans, in the sum of $1,056,502.81, alleging the failure of the partnership to perform said contracts.

(2) Paul E. Workman v. Glassell-Taylor & Robinson and Maryland Casualty Company, in the State Court for the Parish of Calcasieu in Louisiana, in the sum of $110,012.92, wherein Workman alleged that he was a sub-contractor of Glassell-Taylor & Robinson.

(3) H. N. Mitchell v. Paul E. Workman Company and Maryland Casualty Company et al., in the State Court of the Fourteenth Judicial Circuit for the Parish of Calcasieu, Louisiana, for the sum of $3,450 for material alleged to have been furnished to Paul E. Workman as a sub-contractor under Glassell.

(4) McWane Cast Iron Pipe Company v. Paul E. Workman Company and Maryland Casualty Company, in the State Court of the Fourteenth Judicial Circuit for the Parish of Calcasieu, Louisiana, for the sum of $5,952.85, for materials alleged to have been sold to Paul E. Workman, a sub-contractor of Glassell.

The complaint alleged that the following defendants had made claims against plaintiff:

(1) Krause & Managan, Inc., claim of $645.56, for materials alleged to have been furnished to Paul E. Workman.

(2) Mid-Continent Supply Company, claim of $4,186.44, for materials alleged to have been furnished to Paul E. Workman.

(3) Hydraulic Development Corporation, claim of $824.02, for materials alleged to have been furnished to Paul E. Workman.

(4) L. M. Ray, claim of $1,008.72, for labor or materials alleged to have been furnished to Paul E. Workman.

(5) W. S. Dickey Clay Mfg. Co., claim of $5,808.49, for materials alleged to have been furnished to Paul E. Workman.

lection system and the construction of certain roadways and roadway drainage on a housing project at Maplewood * * *."

The partnership of Glassell-Taylor & Robinson executed a performance bond on the 14th of August, 1943, with John W. Harris Associates, Inc., of Louisiana as Obligee, and the plaintiff as surety, in the sum of $595,000, wherein the obligation was to "indemnify the Obligee against any loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract," and which also provided: "That no right of action shall accrue upon or by reason hereof, to, or for the use or benefit of anyone other than the Obligee herein named."

The construction contract of July 2, 1943, covered by the bond of the plaintiff, also designates John W. Harris Associates, Inc., of Louisiana as the "General Contractor", Cities Service Refining Corporation as "Owner", Walker and Gilette, "Consulting Architect", and Glassell-Taylor & Robinson-Young as the "Subcontractor". Throughout the entire contract, which is attached to the complaint, these designations are continuously used. Glassell had no contract to construct any of the houses.

On February 29, 1944, according to the complaint—the allegations of which, on a motion to dismiss, must be taken as true—Jo W. Harris Associates, Inc., of Louisiana claimed that Glassell had defaulted its contracts and ousted the said partnership from the work and taken possession thereof after notice to the partnership.

The plaintiff denies that it is liable under any of the suits or claims for any sums. It alleges that all of the claims arose out of a construction of the same housing project and involve common questions of law and fact with reference to the liability, if any, of the Casualty Company to any of the defendants. It made all the allegations as to jurisdiction that are necessary under either Sec. 41 (26) of Title 28, U.S.C.A.; Rule 22, Federal Rules of Civil Procedure;[2] Sec. 41 (1)(c) of Title 28, U.S.C.A.; and Sec. 400 of Title 28, U.S.C.A.; and executed and deposited a bond in the full sum of the bond in lieu of depositing the cash, as is authorized by Sec. 41 (26), Title 28, U.S.C.A., as amended in 1936.

The plaintiff also alleges that in the event it is liable to any party because of the default of Glassell, its principal, it should in turn have judgment against Glassell for like amount. It prays for a judgment declaring: (a) that its bond, as surety for Glassell, is a conventional bond running solely in favor of John W. Harris Associates, Inc., of Louisiana, and not a statutory bond under Act 298 of the Acts of the Legislature of Louisiana for the year 1926, as amended; (b) that its liability, if any, under said bond is to be measured solely by the terms and provisions of the bond, with no right of action thereupon to or for the use of anyone other than John W. Harris Associates, Inc., of Louisiana; (c) that none of the defendants is entitled to recover from the plaintiff on said bond, but that if the Court should determine that the plaintiff is liable to any of the defendants, it will also determine the amount of its liability and require the defendants to interplead and settle between themselves their right to any money for which the bond is liable; (d) that the plaintiff be discharged from all liability except to such persons as the

---

2 The jurisdiction of the federal court is always in issue, whether raised by the parties or not, and apt and accurate observations as to such jurisdiction are not likely to be mere dicta. We, therefore, may note, in passing, that since Rule 82 expressly provides that Federal Rules of Civil Procedure shall not extend or limit the jurisdiction of the district courts; and since Sec. 41(26) of Title 28, U.S.C.A., is a jurisdictional statute which does not include the provision of Rule 22 that, "It is not ground for objection to the joinder * * * that the plaintiff avers that he is not liable in whole or in part to any or all the claimants"; it would seem that the court below would not have had jurisdiction of the present case wherein the plaintiff makes such a denial of liability to all claimants, had the plaintiff not also made the jurisdictional allegations required in diversity cases generally under Sec. 41(1) of Title 28, U.S.C.A. See Girard Trust Co. v. Vance, 5 F.R.D. 109; Harris v. Travelers Ins. Co., D.C., 40 F.Supp. 154.

Court deems entitled to recover against it; (e) that if the Court should determine that the plaintiff is liable to any defendant, it will also give judgment in its favor against Glassell-Taylor & Robinson and the individual partners thereof in the amount of the liabilities against plaintiff so determined; and (f) that each of the defendants, their agents and attorneys, be temporarily and permanently restrained and enjoined from instituting any action against plaintiff for the recovery of the amount of said bond, or any part thereof, in any State Court or in any other Federal Court, and from proceeding further in the actions already instituted.

The lower Court sustained motions to dismiss the complaint[3] chiefly because a concursus proceeding under the State statute relating to such bonds and claims in connection with such project had been brought and was pending in the State Court prior to this interpleader suit in the Federal Court; that there were interested parties who were before the State Court in the concursus proceeding that were not before the Federal Court; that in the concursus proceeding it was necessary to determine the rights of all interested parties in the entire subject matter—a result not necessary in the interpleader suit; that the concursus proceedings were broader in scope and more adequate to complete relief than the interpleader suit; and that the judgment in the concursus proceedings would be as fully conclusive on the parties as a decree of the Federal Court. The Judge was also of the view that the concursus proceeding partakes of the nature of an action in personam as well as an action in rem as to whatever amount, if any, might remain due by the owner to the contractor; and that the concursus proceeding would have prior jurisdiction over such res.

■■■ We think the lower Court was in error in dismissing the complaint. It stated a cause of action under: (a) the Interpleader Statute; (b) the Rules of Civil Procedure; and (c) the Declaratory Judgment Statute. The Court had jurisdiction of the parties and of the subject matter in all three of these aspects. The absence of parties who are not indispensable, but who ought to be brought before the Court, is not, under Rule 19 (b) of the Federal Rules of Civil Procedure, grounds for dismissing the complaint when the bringing in of such parties will not defeat jurisdiction in the case. Moreover, if the bond is not a statutory bond, but is only the conventional bond of a subcontractor given to the general contractor as obligee, as appears from the contract and the allegations of the complaint, which we must take as true, the owner would be neither an indispensable, nor a necessary, party in a suit relating to the bond. The fact that the owner of the housing project is not made a party, and, therefore, will not be estopped by the decree from later making a claim against plaintiff, will in no wise prevent the Court from adjudicating the rights of those who come in and set up their claims. The Interpleader Act does not require, nor seem to contemplate, that one should be brought in as a claimant who is not, in fact, a claimant.

Counsel for plaintiff, in the oral argument, contended that the owner had made no claim on it, and should not have been made a defendant, but he frankly admitted that if such owner had a claim, a decree in plaintiff's favor could not serve as an exoneration of plaintiff's liability under such claim.

■■■ The Federal Interpleader Statute and Rule 22, Federal Rules of Civil Procedure, were not designed merely to prevent a multiplicity of suits and to protect the stakeholder from multiple liability, but they were also intended to require all interested parties to come in and set up their claims in one case, so as to prevent it from being only a race to the swift, where a creditor who had a large claim and the means by which to prosecute it might promptly secure judgment against the stakeholder in another state, and by a prior execution consume the entire amount of the bond, to the exclusion and detriment of creditors having small claims or inadequate means by which to collect them. The Interpleader Statute was also designed to afford a means

---

[3] See opinion, 61 F.Supp. 828.

of process by which claimants to a fund, who live in other states, may be called in and required to litigate in one court to the end that all claimants to the fund, as well as the holder of the fund, may be given protection.

We consider it important that the usefulness of the statutory remedy of interpleader, which has been greatly enlarged by the Interpleader Act of 1936 and by Rule 22 of the Federal Rules of Civil Procedure, should not be impaired by narrow and restrictive rulings. In such cases where jurisdiction clearly appears, Federal District Courts do not have the right to decline to exercise that jurisdiction in litigation involving no important question of the public policy of the State.

In McClellan v. Carland, 217 U.S. 268, at page 281, 30 S.Ct. 501, 504, 54 L.Ed. 762, the Court remarked:

"It therefore appeared upon the record presented to the circuit court of appeals that the circuit court had practically abandoned its jurisdiction over a case of which it had cognizance, and turned the matter over for adjudication to the state court. This it has been steadily held, a Federal court may not do.

\* \* \* \* \* \*

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, for both the state and Federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the Federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case. In the present case, so far as the record before the circuit court of appeals discloses, the circuit court of the United States had acquired jurisdiction, the issues were made up, and when the state intervened, the Federal court practically turned the case over for determination to the state court. We think it had no authority to do this, and that the circuit court of appeals, upon the record before it, should have issued the writ of mandamus to require the judge of the circuit court of the United States to show cause why he did not proceed to hear and determine the case."

In Chicot County v. Sherwood, 148 U.S. 529, text 534, 13 S.Ct. 695, 697, 37 L.Ed. 546, the Court quoted from Hyde v. Stone, 29 How. 170, 15 L.Ed. 874, wherein it was said: " 'In many cases state laws form a rule of decision for the courts of the United States, and the forms of proceeding in these courts have been assimilated to those of the states, either by legislative enactment or by their own rules. But the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. Suydam v. Broadnax, 14 Pet. 67 [10 L.Ed. 357]; Union Bank v. [Vaiden] Jolly's Administrators, 18 How. 503 [15 L.Ed. 472].' This principle has been steadily adhered to by this court."

In Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 11, 88 L.Ed. 9, wherein this Court undertook to relegate a case to the State Court for a decision on matters embracing the State law of Florida, the Supreme Court reversed, stating among other things, that: "The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment."

In Commonwealth Company v. Bradford, 297 U.S. 613, text 618, 56 S.Ct. 600, 602, 80 L.Ed. 920, the Court said: "Jurisdiction having been properly invoked, it became the duty of the trial court to determine the issues, unless required by rules

based on comity to relegate the complainant to the state court. This may not be done except in special and peculiar circumstances not revealed, we think, by the present record."

 There are not revealed in this case any "special and peculiar circumstances" or any recognized public policy or defined principle such as would "in exceptional cases warrant" the non-exercise of jurisdiction. On the contrary, Congress has provided in the Interpleader Statute [Sec. 41 (26), Title 28, U.S.C., as amended by the Act of January 20, 1936], in sub paragraphs (c) and (d) that the Federal Court

" * * * shall have power to issue its process for all such claimants and to issue an order of injunction against each of them, enjoining them from instituting or prosecuting any suit or proceeding in any State court or in any United States court on account of such money or property or on such instrument or obligation until the further order of the court; which process and order of injunction shall be returnable at such time as the said court or a judge thereof shall determine and shall be addressed to and served by the United States marshals for the respective districts wherein said claimants reside or may be found.

"(d) Said court shall hear and determine the cause and shall discharge the complainant from further liability; and shall make the injunction permanent and enter all such other orders and decrees as may be necessary or convenient to carry out and enforce the same."

Thus instead of there being some "recognized public policy or defined principle" to the contrary, the statute, which announces the public policy, does not leave it optional with the Court to pretermit such a case to State Court action, but on the contrary authorizes the Federal Court to enjoin State Court proceedings in order to protect its jurisdiction.

In Treinies v. Sunshine Mining Co., 308 U.S. 66, text 74, 60 S.Ct. 44, 49, 84 L.Ed. 85, the Court, in an interpleader case, said: "Neither are the provisions of Section 265 of the Judicial Code, 28 U.S. C.A. § 379, applicable. That section forbids a United States court from staying proceedings in any state court. The Interpleader Act, passed subsequently, however, authorizes the enjoining of parties to the interpleader from further prosecuting any suit in any state or United States court on account of the property involved. *Such authority is essential to the protection of the interpleader jurisdiction and is a valid exercise of the judicial power.*" (Emphasis added.)

It is our view that under these decisions the lower Court was in error in dismissing the case, even though it considered the State Court in the concursus proceeding capable of affording fuller relief than the Federal Court could have in the case before it.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.