BOSTON OLD COLONY INSURANCE
COMPANY, Plaintiff-Appellant,

v.

Manuel BALBIN and Central Bank and
Trust Company, Defendants-Appellees.

No. 78–2279
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 21, 1979.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Rodney Earl Walton, Miami, Fla., for plaintiff-appellant.

William A. Ingraham, Jr., Bertram A. Sapurstein, Miami, Fla., for defendants-appellees.

Before COLEMAN, FAY and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge.

This appeal is taken from the dismissal of an interpleader action brought by Boston Old Colony Insurance Company (Old Colony), appellant, based upon diversity of citizenship and Rule 22 of the Federal Rules of Civil Procedure,[1] as well as 28 U.S.C. § 1335.[2] The defendants-appellees are Manuel Balbin and Central Bank and Trust Company (Central Bank). We find that the judgment of the District Court must be reversed.

On February 12, 1976, Old Colony issued Balbin a marine insurance policy with a total face value of $15,000—$14,000 of which covered his interest in an allegedly home-made boat and $1000 of which covered his boat trailer. Among other things, the policy covered theft of the boat and trailer. In June 1976, Balbin filed a claim, alleging that the boat and trailer had been stolen. Naturally, he claimed a total loss and asserted that he was entitled to the policy proceeds.

Upon investigation, Old Colony discovered facts which led it to believe that the vessel insured was not the one Balbin had claimed it was because it was not home-made. Old Colony thus felt it had reason to believe that the insurance policy was void because it had been obtained by knowing misrepresentation of material facts. Old Colony refused to pay Balbin.

On March 30, 1977, Central Bank filed suit against Old Colony in the Circuit Court, 11th Judicial District, Dade County, Flori-

---

1. Rule 22 Federal Rules of Civil Procedure

   *Interpleader*

   (1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

   (2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C. §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules.

2. 28 U.S.C. § 1335

   (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certif- icate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

   (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

   (b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

da, claiming that it had a perfected security interest in the boat covered by the insurance policy. Central Bank claimed that an endorsement to the policy had made it a loss payee.

Old Colony moved unsuccessfully to dismiss that action for failure to join Balbin as an indispensable party. Although Florida has an interpleader provision patterned after the Federal Rule,[3] Old Colony never sought to interplead Balbin and thereby protect itself against multiple and vexatious litigation. Meanwhile, Balbin refused to join the state court suit as a party plaintiff and, in fact, threatened to institute a completely separate suit against Old Colony to recover his interest in the insurance proceeds.

About a year later, while the state court action was yet pending, Old Colony filed this interpleader action in the District Court for the Southern District of Florida, naming both Central Bank and Balbin as defendants. Old Colony claimed that it might be exposed to multiple litigation and damages in excess of the policy limits, and it deposited the full amount of the policy proceeds, $15,000, into the registry of the court. Far from being a disinterested stakeholder, Old Colony denied that Balbin had an insurable interest in the stolen boat because of the misrepresentations concerning the policy, and it also denied that the Central Bank was entitled to a portion of the policy proceeds by virtue of any loss payable endorsement.[4] Additionally, Old Colony moved the District Court to enjoin and restrain Balbin and Central Bank from prosecuting any proceeding in any state or federal court which would affect the proceeds of the insurance policy.[5]

**3.** Florida Rules of Civil Procedure § 1.240 (1979).

Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claim of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties otherwise permitted.

**4.** The appellant's complaint alleges that "[t]he loss payable endorsement under which CENTRAL BANK AND TRUST COMPANY made its claim was made out by an organization not an agent of the Plaintiff, was made out on a form which is not used by the Plaintiff, and had not been approved by the Plaintiff in violation of the terms of the policy."

In appellant's memorandum in support of its motion for a restraining order by the district court, it is pointed out that in a sworn deposition Balbin admitted that he had taken a loan from Central Bank and Trust Co., but he denied any knowledge of a loss payable amendment to his policy.

In its complaint in the Florida Circuit Court, the Bank asserts that Balbin executed a note and security agreement in favor of the Bank on April 20, 1976, giving the boat as collateral for the loan, and that the Bank was named a loss-payee on the insurance policy.

**5.** We note that there is a substantial question as to whether Old Colony will automatically be entitled to the injunction which it seeks upon remand to the District Court. In the first place, since both Balbin and Central Bank are Florida citizens, and Old Colony is not, the jurisdiction of the District Court may be founded solely upon the general diversity statute, 28 U.S.C. § 1332. However, the fact that Old Colony is not a disinterested stakeholder may warrant the lower court in considering its citizenship in order to establish that minimal diversity necessary to satisfy the requirements of the statute. *Compare State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) *with Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939). *Compare* 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3636 (1976) (urging that the citizenship of the interested stakeholder be considered for determining jurisdiction under 28 U.S.C. § 1335) *with* 3A J. Moore, Moore's Federal Practice ¶ 22.09 (1978) (urging the contrary). Since the parties have not briefed this question, our brief research has failed to uncover a Fifth Circuit case deciding the precise issue in light of the *Tashire* case. If jurisdiction rests solely on the diversity statute, it is questionable whether the District Court could enjoin the proceedings in the state court because of the Anti-Injunction Act, 28 U.S.C. § 2283. 28 U.S.C. § 2361 expressly refers to § 1335 and does not mention either the diversity statute or Rule 22. *See* 3A J. Moore, Moore's Federal Practice ¶ 22.04[3] (1978); 7 C. Wright & A. Miller, Federal Practice and Procedure § 1703 (1972).

The defendants filed motions to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. No hearing was held on these motions, but after the filing of "numerous memorandum of law", the District Court ordered the complaint dismissed on May 25, 1978. It filed no reasons in writing for the dismissal.

Following Old Colony's filing of its notice of appeal to this Court, Balbin instituted a separate state court suit against Old Colony. This latter suit was consolidated with the earlier suit filed by Central Bank, and to the best of our knowledge the consolidated state court action is still pending.

Old Colony's basic argument is that once a stakeholder has made a showing in federal court of the essential jurisdictional facts of a case pursuant to either the interpleader statute, 28 U.S.C. § 1335, or the diversity statute, 28 U.S.C. § 1332, the court may not decline to exercise that jurisdiction on the grounds that one of the defendants had already brought suit against the plaintiff in state court. Additionally, Old Colony argues that the availability of a state court interpleader procedure is irrelevant to federal jurisdiction.

On the other hand, Central Bank argues that on grounds of equity and comity the District Court had discretion to dismiss the interpleader action where there are ample state court procedures available for protection of one claiming to be exposed to multiple litigation and liability.

■ Initially, we must reject Central Bank's argument that the consolidated state court proceeding somehow destroys federal jurisdiction. Rule 22 permits interpleading persons "when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Nothing in the language of the rule is concerned with the availability of state court procedures to

resolve such competing claims nor with the invocation of such procedures by the filing of a lawsuit. The rule speaks only in terms of "claims", and that is what is involved in this case. Similarly, 28 U.S.C. § 1335 speaks in terms of "adverse claimants [who] are claiming or may claim to be entitled to such money or property . . . ." Therefore, at least with respect to 28 U.S.C. § 1332 and Rule 22, the jurisdiction of the District Court was properly invoked by this interpleader action. *See* note 5, *supra.*

■ Once jurisdiction is established in a diversity case, the general rule is that the District Court must proceed to decide the case in accordance with its customary procedures for the management of its cases. *Meredith v. Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Chief Justice Stone, speaking for the Court in that case, stated:

> Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine. . . . Decision here does not require the federal court to determine or shape state policy governing administrative agencies. It entails no interference with such agencies or with the state courts. No litigation is pending in the state courts in which the questions here presented could be decided. We are pointed to no public policy or interest which would be served by withholding from petitioners the benefit of the jurisdiction which Congress has created with the purpose that it should be availed of and exercised subject only to such limitations as traditionally justify courts in declining to exercise the jurisdiction which they possess. 320 U.S. at 236–37, 64 S.Ct. at 12.

In any event, the issuance of such an injunction would be a matter addressed to the discretion of the District Court. In view of the facts that the state court now has jurisdiction over all of the claimants and that the questions presented appear to be matters of contract interpretation and state law, the District Court may decide that an injunction is not appropriate.

We, of course, do not intimate any decision on these questions.

The Court also noted that the exceptions to the general rule relate to the discretionary powers of courts of equity, 320 U.S. 235–36, 64 S.Ct. 7, and it is certainly true that rule interpleader traces its roots to the courts of equity. In recognition of such considerations, other courts have held that federal district courts may dismiss or stay an interpleader proceeding if an action already pending before a state court might obviate the need for the interpleader remedy in the federal court. *See, e. g., Koehring Co. v. Hyde Construction Co.*, 7 Cir. 1970, 424 F.2d 1200; *Home Indemnity Co. v. Moore*, 8 Cir. 1974, 499 F.2d 1202. *See also* 7 C. Wright & A. Miller, Federal Practice and Procedure § 1709 (1972); 3A J. Moore, Moore's Federal Practice ¶ 22.16[1] (1978).

However, in this Circuit the general rule has been otherwise. In *Maryland Casualty Co. v. Glassell-Taylor & Robinson*, 5 Cir. 1946, 156 F.2d 519, the plaintiff (Maryland Casualty) brought an interpleader action against various defendants who had claims against the company based on a construction contract. The district court sustained motions to dismiss the complaint because a concursus proceeding[6] relating to bonds and claims in connection with the contract had been brought under the state statute and was pending in the state court prior to the filing of the interpleader suit in federal court. In its ruling the district court pointed out that "the concursus proceedings were broader in scope and more adequate to complete relief than the interpleader suit." 156 F.2d at 523.

Despite those facts, we reversed and commented that:

> We consider it important that the usefulness of the statutory remedy of interpleader . . . should not be impaired by narrow and restrictive rulings. In such cases where jurisdiction clearly appears, Federal District Courts do not have the right to decline to exercise that jurisdiction in litigation involving no important question of the public policy of the State. 156 F.2d at 524.

The Court further explained that if jurisdiction had been properly invoked, it was the duty of the trial court to determine the issues unless unusual circumstances triggered rules based on comity which would necessitate relegating the complaint to the state court. 156 F.2d at 524–25. The Court found no such unusual circumstances present and remanded the case to the district court.

Despite the passage of some 33 years since the decision in *Maryland Casualty*, we do not think that the rule established in that case has been significantly undermined by subsequent decisions of the Supreme Court or this Court. The few Supreme Court decisions which have sanctioned abstention in diversity cases not involving a federal constitutional issue have been cases involving substantial and important public policies of the states. *See, e. g., Kaiser Steel Corp. v. W. S. Ranch Co.*, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968) (water rights in New Mexico); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (eminent domain). Such cases are, of course, entirely consistent with our holding in *Maryland Casualty*.

Several Fifth Circuit decisions have a bearing on the question presented in this case. *Fulton v. Kaiser Steel Corp.*, 5 Cir. 1968, 397 F.2d 580, gives specific support to the *Maryland Casualty* rule. In *Fulton* we affirmed the dismissal of an interpleader suit by the lower court because a suit had already been filed in another *federal* court and the plaintiffs were not faced with claims exceeding the amount of the bond they had paid. The Court distinguished the *Maryland Casualty* case as follows:

> The question there did not involve a determination of whether the federal district court had jurisdiction under a complaint for interpleader. It rather involved a situation where federal jurisdiction was present but a prior suit over the same subject matter had been brought in state court.

---

**6.** "A proceeding in Louisiana similar to interpleader. See *Louisiana Molasses Co. v. Le Sassier*, 52 La.Ann. 2070, 28 So. 217." Black's Law Dictionary (4th Ed. Rev. 1968).

397 F.2d at 583.

In *United Services Life Insurance Co. v. Delaney*, 5 Cir. 1964, 328 F.2d 483, the en banc court, by a bare 5–4 majority, ordered abstention in two diversity cases involving purely Texas law issues. No official state action or state regulatory program was involved in any way. When the Texas courts refused to entertain declaratory judgment actions to settle the obscure questions of state law, we decided the cases. *See United Services Life Insurance Co. v. Delaney*, 5 Cir. 1966, 358 F.2d 714. Since that episode, we have ordered the dismissal of some cases involving important issues of Texas law where *Pullman*-type abstention would normally have been appropriate. *See Barrett v. Atlantic Richfield Co.*, 5 Cir. 1971, 444 F.2d 38. In order to appreciate the impact of *Delaney* upon the case now before us, it is necessary to analyze the concerns articulated by Judge Brown (now Chief Judge Brown) in his concurring opinion, an opinion which is especially significant in light of the bare majority which decided the case. After analyzing a number of Fifth Circuit diversity cases where the panels "guessed wrong" as to what the state law on the question presented actually was, and after detailing the serious consequences for litigants and the administration of justice entailed by such wrong guesses, Judge Brown stated that "[a]ll of these consequences can be avoided in a diversity case by devising a suitable method by which to obtain an authoritative state ruling on the controlling question of state law." 328 F.2d at 487.

Such a "suitable method" is available, if needed, in the case now before us. Florida was the leader in developing a certification procedure, and the Supreme Court has urged the federal courts to employ that procedure when a proper occasion is presented. *See Lehman Bros. v. Schein*, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).

▮ Therefore, we hold that, at least with respect to cases involving the state law of Florida, where certification procedures are available to settle important questions of state law, the *Delaney* case has not impaired the rule of *Maryland Casualty*. No important public policy of Florida was involved in this case, and there were no unusual circumstances present to warrant dismissal. Therefore, the District Court was not warranted in dismissing this case.

To the contrary, we think that at the time these dismissal motions were before the District Court there was good reason to go ahead and decide the case. Old Colony faced the following difficulties with the state court proceedings: (1) it could not remove the state court action because the requisite jurisdictional amount was then lacking; (2) it faced two possible state suits with claims in excess of the policy; and (3) it had been unsuccessful in its effort to dismiss the state court action for failure of Central Bank to join Balbin as an indispensible party. Finally, Balbin did not file his separate suit against Old Colony in state court (a suit which was later consolidated with Central Bank's suit and remains pending) until *after* the District Court had dismissed the interpleader action.[7]

In summary, the District Court had jurisdiction over all the parties and the subject matter. It should have heard the case and adjudicated the rights of the parties.

Therefore, the judgment of dismissal is reversed. The case is remanded for further proceedings not inconsistent herewith.

REVERSED and REMANDED.

---

7. In *Jefferson Standard Life Insurance Co. v. Smith*, E.D.S.C.1956, 161 F.Supp. 679, the district court retained jurisdiction over the federal interpleader suit in spite of the fact that a suit had been filed against the insurer in state court and South Carolina law allowed other defendants to be impleaded (as in the instant case). The court stated as one of its reasons for doing so the following:

In the State Court action heretofore commenced, all of the parties to the controversy are not represented. It is merely asserted that all of the parties *can* be made parties to that action. While that may be true, it does not seem that the plaintiff should be required to risk its rights on the possibility that the State Court will act to protect those rights, especially when all of the parties are now before this Court.

161 F.Supp. at 681.