**BOARD OF SUPERVISORS OF LOUISI-ANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANI-CAL COLLEGE et al., Appellants,**

v.

**Alexander P. TUREAUD, Jr., a Minor, by Alexander P. Tureaud, Sr., his father and next friend, Appellee.**

No. 15540.

United States Court of Appeals
Fifth Circuit.

Aug. 23, 1955.

Cameron, Circuit Judge, dissented.

W. Scott Wilkinson, Shreveport, La., L. H. Perez, New Orleans, La., L. W. Brooks, C. V. Porter, J. R. Fuller, Baton Rouge, La., Fred S. Leblanc, Attorney General of La., W. C. Perrault, First Asst. Atty. Gen., J. Clyde Pearce, Asst. Atty. Gen., J. H. Tucker, Jr., Shreveport, La., Fred Blanche, Baton Rouge, La., Arthur O'Quin, Shreveport, La., Victor A. Sachse, Baton Rouge, La., R. B. Sadler, Jr., Alexandria, La., C. C. Bird, Jr., Baton Rouge, La., H. C. Sevier, Tallulah, La., A. J. Shepard, Jr., Lake Charles, La., Grove Stafford, Alexandria, La., Oliver Stockwell, Lake Charles, La., Wood H. Thompson, Monroe, La., Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., Wilkinson, Lewis & Wilkinson, Shreveport, La., of counsel, for appellants.

Robert L. Carter, New York City, A. P. Tureaud, New Orleans, La., U. S. Tate, Dallas, Tex., and Thurgood Marshall, New York City, for appellee.

Before RIVES and CAMERON, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

As in the Delaware case, Gebhart v. Belton, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; (Brown v. Board of Education), 349 U.S. 294, 75 S.Ct. 753; this case was based on the so-called "separate but equal" doctrine announced in Plessy v. Ferguson, 163 U.S. 537, 16 S. Ct. 1138, 41 L.Ed. 256. The district court treated the case as if it presented only fact issues involving no necessity for deciding the constitutionality of any provision of Louisiana law. Tureaud v. Board of Supervisors, etc., D.C., 116 F. Supp. 248. On first appeal, the majority of this Court, one judge dissenting, held that the district judge was without jurisdiction to hear and determine the application for injunction, and that a three judge court was required under Section 2281 of Title 28, United States Code. Board of Supervisors, etc. v. Tureaud, 5 Cir., 207 F.2d 807. The Supreme Court granted certiorari, vacated the judgment of this Court, and remanded the case to this Court for consideration in the light of the Segregation Cases decided May 17, 1954, Brown v. Board of Education, etc., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and conditions that now prevail, 347 U.S. 971, 74 S.Ct. 784, 98 L.Ed. 1112; thereby, we think, necessarily holding that the matters for consideration and decision were within the jurisdiction of this Court and of the one-judge district court from which it came. This Court, therefore, remanded the case to the district court for consideration in the light of the Segregation Cases and conditions that now prevail. Though appellants insist otherwise in brief, the record does not disclose that upon remand any additional evidence was offered. The district court having theretofore made full findings of fact and conclusions of law, 116

F.Supp. 248, again restrained and enjoined the respondents, appellants, "pending the determination of this action, from refusing on account of race or color to admit the plaintiff, and any other Negro citizen of the state similarly qualified and situated, to the Junior Division of Louisiana State University and Agricultural and Mechanical College for the purpose of pursuing the combined arts and sciences and law course offered by the University."

In Gebhart v. Belton, supra [347 U.S. 483, 74 S.Ct. 688], the Supreme Court of the United States affirmed the judgment of the Supreme Court of Delaware based on the old so-called "separate but equal" doctrine. Under that precedent, we cannot do otherwise here.

We have carefully reviewed the questions of procedure and of fact raised by appellants, and in our opinion none of those questions have merit, nor require discussion. The judgment is therefore

Affirmed.

CAMERON, Circuit Judge.
I dissent.

RIVES, Circuit Judge.
I specially concur.

CAMERON, Circuit Judge (dissenting).

I think the judgment of the District Court should be reversed because it failed to obey the mandate of this court and the Supreme Court, because it failed to enter Findings of Fact and Conclusions of Law, and failed to require appellee to clarify his position so that the question of a Three-Judge Court could be intelligently passed upon.

I.

(a) One week after it had rendered its decision in the Segregation Cases [1] the Supreme Court entered a memorandum opinion [2] in the form of a judgment

---

1. Brown v. Board of Education, May 17, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

2. 347 U.S. 971, 74 S.Ct. 784, 98 L.Ed. 1112.

in the case now before us reading as follows:[3]

"On petition for writ of certiorari to the United States Court of Appeals for the Fifth Circuit. Per Curiam: The petitions for writs of certiorari are granted. The judgments are vacated and the cases are remanded for consideration in the light of the Segregation Cases decided May 17, 1954, Brown v. Board of Education [349 U.S. at page] 483 [74 S.Ct. 686] *and conditions that now prevail.*"[4]

The mandate from the Supreme Court to this court contained the same language as the judgment of the Supreme Court. After reciting the vacation of the judgment theretofore entered by this court, the mandate contained these words:

"And it is further ordered that this cause be and same is hereby remanded to the United States Court of Appeals for the Fifth Circuit for *consideration* in the light of the Seggregation Cases decided May 17, 1954, Brown v. Board of Education, etc., and *conditions that now prevail.*"

This court thereupon remanded the case to the District Court, using the identical language in the mandate.

The District Court, properly constituted[5], was, therefore, "commanded" to *consider* the case sent back to it "in the light of * * * conditions that now prevail". The District Court did not comply with that mandate, but ignored it. That Court merely heard the legal argument on the motion to reinstate the injunction, addressed obviously to the number of judges which should constitute the court, took it under advisement and sustained it without receiving or considering any evidence at all.

The majority opinion seems to sanction that procedure, citing the Gebhart case [6] as the basis therefor. I cannot follow that reasoning. If the Supreme Court had intended that appellee should be admitted to L.S.U.[7] without further hearing, it would logically have reversed our judgment and entered an order reinstating the judgment of the District Court which had ordered such admission.

But it did not do that. Instead, it ordered a *consideration* of appellee's case "in the light of conditions that now prevail". To approve what the court below did is to treat that language as if it had not been used. That could be done only upon the assumption that the most vital provision in the Supreme Court's order was the product of inadvertence. Since we used the same words in our mandate to the court below we would convict this court also of inserting words in a solemn legal document which were entirely devoid of meaning or significance.

(b) The motion to reinstate the preliminary injunction did not assign any grounds and did not attach any affidavits

---

3. The District Court, through one judge, had, September 11, 1953, 116 F.Supp. 248, rendered an opinion and entered judgment granting a preliminary injunction requiring the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College to admit plaintiff and members of his class to the Junior Department of said university. [The brief refers to appellee in the singular and we will do likewise.] We had, on October 28, 1953, 207 F.2d 807, reversed on the ground that the case was one for a three-judge court and the single judge had acted without jurisdiction. After staying our mandate, 346 U.S. 881, 74 S.Ct. 143, 98 L.Ed. 388, the Supreme Court granted certiorari and entered the judgment above quoted.

4. Here and elsewhere in this opinion the emphasis is supplied by us unless otherwise noted.

5. The question of whether the case was one for one judge or three judges is discussed under Part III infra.

6. Gebhart v. Belton, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; 348 U.S. 886, 75 S.Ct. 210, one of the "Segregation Cases" embraced in the decisions of May 14, 1954 and May 31, 1955.

7. The correct name is Louisiana State University and Agricultural and Mechanical College but the abbreviation is used throughout this opinion.

or refer to any testimony which had been or was being served under the Rules of Procedure, 28 U.S.C., and contained only this language: "Plaintiff * * * moves the court to reinstate its temporary or preliminary injunction issued herein against the defendants on September 11, 1953".

The defendants (appellants) filed an elaborate opposition to the granting of the motion, and the parties proceeded to argue it without any testimony at all, and the court entered an order reinstating the preliminary injunction in these words:

"This cause came on at a former date to be heard on the motion of the plaintiff to reinstate the preliminary injunction issued herein on September 11, 1953, and *was argued by counsel* for the respective parties and submitted, when the court took time to consider;

"Now, on due consideration thereof, it is ordered by the court that the motion of the plaintiff to reinstate the preliminary injunction issued herein on September 11, 1953 be and the same is hereby granted."

It is clear that the District Court did not hear any evidence and did not give consideration to, or make any finding in response to, the order and mandate of the Supreme Court and the mandate of this Court that it consider the case in the light of "conditions that now prevail".

The majority opinion mentions that the record does not reflect that appellants introduced any evidence on the motion before the District Court. Through their counsel they stated in their briefs and in oral argument before this court that they offered to introduce evidence and asked to be permitted the opportunity to introduce evidence on that subject. This statement was not denied by appellee, and there is no reason that it should be questioned. The fact is that the handling of the case by the District Court shows that it was handled as if a matter of law only was involved, no reporter was present, and none of the proceedings were taken down or transcribed. It is not conceived that the District Court could escape the duty to *consider* "conditions that now prevail" on so technical a ground as that mentioned in the majority opinion. The order of the Supreme Court and its mandate made it clear that it was introducing an entirely new ingredient into the case and was commanding that the District Court consider evidence with respect to it. The District Court had no jurisdiction to dispose of the case in any manner except in strict obedience to the command of the Supreme Court and of this court.[8]

Moreover, the position taken in the majority opinion which implies that appellants should not be heard because they failed to introduce evidence before the District Court cannot find support in the Rules of Procedure. If the case is to be considered on so technical a basis, it is clear that the appellants were never called upon to introduce any proof because appellee, whose motion was under consideration, had introduced none.[9]

Appellee was required by Rule 7(b)(1) F.R.C.P. to serve and file a "motion which * * * shall *state with particularity the grounds therefor*". The Rules further provide [10] that no preliminary injunction shall be issued without notice,

**8.** "Mandates * * * communicate the decisions and directions of the appellate court to the trial court and reinvest it with jurisdiction." 5 C.J.S., Appeal and Error, § 1958, p. 1487. "It is the duty of the lower court, on the remand of the cause, to comply with the mandate of the appellate court and to obey the directions therein, without variation * *." Id., § 1966, p. 1512. And see: In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414; Litchfield v. R. R. Co., 7 Wall. 270, 74 U.S. 270, 272, 19 L.Ed. 150; F. C. C. v. Pottsville Broadcasting Co., 309 U.S. 134, 140, 60 S.Ct. 437, 84 L.Ed. 656; Illinois Bell Tel. Co. v. Slattery, 7 Cir., 1939, 102 F.2d 58.

**9.** Cf. Authorities in Note 35 infra.

**10.** 65(a).

and that affidavits shall be served five days before the hearing if the motion is to be heard upon affidavits [11]. Finally, the District Court was forbidden to issue this interlocutory injunction without setting forth the grounds thereof:[12] "* * * and in granting or refusing interlocutory injunctions the court *shall similarly set forth* the findings of fact and conclusions of law which constitute the grounds of its action".

The District Court, therefore, committed clear error in failing to follow the mandate which alone gave it jurisdiction, in failing to hear evidence on "conditions that now prevail", and in failing to obey the strict requirements of the statute that findings of fact and conclusions of law be set forth as the grounds for issuance of a preliminary injunction. This last error will be discussed further in IV, *infra*.

## II.

The meaning and import of the Supreme Court's language commanding that the case be "considered * * * in the light * * * of conditions now prevailing" is made manifest by the actions taken and the language used in the Segregation Cases.

After contrasting the development of public education generally in the North and the South at the time the Fourteenth Amendment became effective, and pointing out that "in the South, the movement toward free common schools, supported by general taxation, had not yet taken hold. Education of white children was largely in the hands of private groups. Education of Negroes was almost nonexistent, and practically all of the race were illiterate. In fact, any education of Negroes was forbidden by law in some states", the Supreme Court, in its original decision in the Segregation Cases,[13] stated this:

"Because these are class actions, because of the wide applicability of this decision, and because of the great variety of local conditions, the formulation of decrees in these cases presents problems of considerable complexity. * * * In order that we may have the full assistance of the parties in formulating decrees, the cases will be restored to the docket, and the parties are requested to present further argument on Questions 4 and 5 previously propounded by the Court for the reargument this term. * * * The attorneys general of the states requiring or permitting segregation in public education will also be permitted to appear amici curiae * * *." [14]

At the expiration of a year and two weeks the Supreme Court rendered its second opinion [15] ordering that the courts which originally heard the cases should be given the responsibility of carrying out the principles enunciated. Here we bring together excerpts from the opinion: [16]

11. Rule 6(d) and cf. Rule 43(e).

12. Rule 52(a) F.R.C.P.

13. Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 489, 490, 495, 74 S.Ct. 686, 689.

14. These excerpts are taken from those questions 4 and 5, 347 U.S. at pages 495–496, 74 S.Ct. at page 692: "'(a) would a decree necessarily follow providing that, within the limits set by normal geographic school districting, Negro children should forthwith be admitted to schools of their choice, or

"'(b) may this court, in the exercise of its equity powers, permit an effective graudual adjustment to be brought about from existing segregated systems to a system not based on color distinctions? * * *

"'5. (d) should this Court remand to the courts of first instance with directions to frame decrees in these cases, and if so what general directions should the decrees of this Court include and what procedures should the courts of first instance follow in arriving at the specific terms of more detailed decrees?'"

15. Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753.

16. 349 U.S. at pages 298–300, 75 S.Ct. 755–756.

"Because these cases arose under different local conditions and *their disposition will involve a variety of local problems,* we requested further argument on the question of relief. * * *

"Full implementation of these constitutional principles may require solution of *varied local school problems.* School authorities have the primary responsibility for elucidating, assessing, and solving these problems * * *. Because of their *proximity to local conditions* and the possible need for further hearings, the courts which originally heard these cases *can best perform this judicial appraisal.* Accordingly, we believe it appropriate to remand the cases to those courts.

"In fashioning and effectuating the decrees, the courts will be guided by equitable principles. Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a *facility for adjusting and reconciling public and private needs.* These cases call for the exercise of these traditional attributes of equity power." 349 U.S. at pages 298, 299–303, 75 S.Ct. at pages 755, 756.

Those cases and the opinions written in them are binding upon the parties to them under the factual situations involved. They deal with applicants for admission to graded schools, elementary and high. The principles enunciated, however, give guidance to other courts dealing with other cases. It was the duty of the court below to deal with this case in the light of the principles stated in these opinions as they clarified and made manifest the provisions of the mandate directing consideration by the court below of conditions now prevailing.

It is clear that the court below was required to hold a hearing and ascertain the conditions "now prevailing." It was not enough that the facilities provided for plaintiff, a Negro youth, were not equal to those provided for white people. There must be a further hearing to ascertain the impact of a decree upon plaintiff's rights, upon the situation now maintaining at the school he was attending at the time his suit was instituted, upon L. S. U., and upon the interests of the public generally. The holding of a proper balance between all of these rights and interests called for judicial statesmanship of the highest order. To fail to respond to that call amounted to an abandonment of the judicial function.[17]

It is not sufficient to say that this case arose under the "old so-called 'separate but equal' doctrine". So did State ex rel. Hawkins v. Board of Control of Florida,[18] but the Supreme Court entered the same order in that case requiring a hearing on conditions then prevailing. Moreover, Muir v. Louisville Park Theatrical Association[19] involved whether Negroes should be admitted to theatrical performances in a public park. The Supreme Court sent that case back for consideration of the same "conditions as they now prevail".

It is clear, therefore, that the purpose of the Supreme Court thus specified requires that every case involving segregation shall include as one of the questions presented for decision "conditions prevailing" at the time of its hearing as they relate to the plaintiff and his rights, the schools and their problems, and the public and its welfare.[20]

17. Cf. McClellan v. Carland, 217 U.S. 268, 281, 30 S.Ct. 501, 54 L.Ed. 762; Meredith v. Winterhaven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, reversing same case, 5 Cir., 1943, 134 F.2d 202, and Maryland Cas. Co. v. Glassell, 5 Cir., 1946, 156 F.2d 519.

18. State ex rel. Hawkins v. Board of Control of Florida, Fla., 47 So.2d 608,

Id., Fla., 53 So.2d 116, Id., Fla., 60 So. 2d 162.

19. 6 Cir., 1953, 202 F.2d 275.

20. As illustrative of this are the actions taken in the South Carolina and Virginia cases remanded to the respective courts in the Segregation Cases. 349 U.S. 294, 75 S.Ct. 753. No. 2, Briggs, et al. v. Elliott et al. was remanded to the Dis-

It is further clear that the performance of this important function, the striking of this delicate balance, was deliberately committed to courts in the respective localities, acquainted with local conditions, and alive and responsive to local problems and sentiment. Having given long consideration to the other suggested methods, the Supreme Court selected the course best suited to a sane resolution of the complex problems involved and committed the effectuation of the policies announced to the benign aegis of local action.[21] The District Court here made no effort to apply those teachings of the Supreme Court or to carry out the mandate of this court. It was commanded to give that consideration, and it failed to do so, and it committed error in a matter of very great importance.

### III.

(a) We are next confronted with the question whether the court below erred in refusing to convene a Three-Judge Court pursuant to the decision of the case by this court on former appeal and the mandate requiring such action.[22] The majority thinks that the court below properly heard the case, without calling in two other judges, on the ground that this litigation does not involve the construction of the Constitution or any statute of the State of Louisiana, but merely the action of a Board proceeding without reliance upon the sanction of any statute.

If this record made that clear, I would agree with the majority position on this point. The statute[23] creating Three-Judge Courts applies, under its terms, only to intervention by a federal court in state affairs where the state official claims to be acting in obedience to the state constitution or statutes. But that statute makes it crystal clear that an injunction issued by a federal court in derogation of the statute is void and, therefore unenforceable. "An interlocutory or permanent *injunction* * * * *restraining the action of any officer of such State* in the enforcement or execution of such statute * * * *shall not be granted* by any district court or judge thereof upon the ground of the unconstitutionality of such statute * * *."

A proper safeguarding of the rights of the states requires that the present proceedings be examined carefully to determine whether the factors embraced within the statutory provisions are present here. Unfortunately the record does not disclose with accuracy the true situation with respect to that crucial point. Appellee has taken the position at times that the action is one to restrain enforcement of the Louisiana Constitution, and at other times has taken the opposite position. If the action does assail steps taken by the state officials of Louisiana, acting under color of authority of its Constitution or statutes, it is too clear for argument that a Three-Judge Court must be convened and that any injunction sought to be issued without that protection to the rights of the states would be a complete nullity.

The Supreme Court confirmed that the statute meant what it said in Stratton v.

---

trict Court for the Eastern District of South Carolina, and No. 3, Davis, et al. v. School Board of Prince Edward County, Va., was remanded to the District Court for the Eastern District of Virginia, both with instructions to admit Plaintiffs to the schools from which they had been respectively excluded. In each instance a *Three-Judge Court* heard evidence and postponed their admission because of the other factors involved.

21. Compare the language quoted by Mr. Justice Black in Burford v. Sun Oil Co., 1943, 319 U.S. 315, 332, 63 S.Ct. 1098,

1106, 87 L.Ed. 1424: " 'Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, * * *. These cases reflect a doctrine of absention appropriate to our federal system * * * because of "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary * * *.' "

22. Board of Supervisors, etc. v. Tureaud, 5 Cir., 207 F.2d 807.

23. 28 U.S.C.A. § 2281.

St. Louis Southwestern Railway Co., 1930, 282 U.S. 10, 14–15, 51 S.Ct. 8, 9, 75 L.Ed. 135:

> "The decisions of this Court require the following conclusions as to the purpose and effect of the statute.
>
> " * * * By the statute * * *, the Congress sought to make interference by interlocutory injunction with the enforcement of state legislation a matter for the *adequate hearing and full deliberation* which the presence of a court composed of three judges, as provided by the statute, was likely to secure. * * *
>
> " * * * If an application for an interlocutory injunction is made and pressed to restrain the enforcement of a state statute, or of an administrative order made pursuant to a state statute, upon the ground that *such enforcement* would be in violation of the Federal Constitution, a single judge has no jurisdiction to entertain a motion to dismiss the bill on the merits. *He is as much without power to dismiss the bill on the merits as he would be to grant either an interlocutory or a permanent injunction. * * * "*

One of the cases cited in the foregoing opinion was a Louisiana case emphasizing the underlying purpose of the statute:[24]

> "The legislation was enacted for the manifest purpose of *taking away the power* of a single United States judge, * * * to issue an interlocutory injunction against the execution of a state statute by a state officer or of an order of an administrative board of the state pursuant to a state statute, on the ground of the federal unconstitutionality of the

statute. Pending the application for an interlocutory injunction, a single judge may grant a restraining order to be enforced until the hearing of the application, but thereafter, so far as enjoining the state officers, *his power is exhausted.* The wording of the section leaves no doubt that Congress was by provisions *ex industria* seeking to make *interference* by interlocutory injunction from a federal court *with the enforcement of state legislation* regularly enacted and in course of execution, a matter of the adequate hearing and the full deliberation which the presence of three judges, one of whom should be a Circuit Justice or Judge, was likely to secure. It was to prevent the improvident granting of such injunctions by a single judge, and the possible *unnecessary conflict between federal and state authority* always to be deprecated."

After holding that a single judge was without power to affect the operation of the order of a Three-Judge Court by allowing bond or otherwise, the Supreme Court concluded the point with this language:

> "Arguments to show that the order only continued the *status quo*, that a disturbance of it will work irreparable injury and that the bond herein required secures all parties in interest are beside the point. *This is a question of statutory power and jurisdiction,* not one of judicial discretion or equitable consideration."

Appellees seek to justify the one-judge handling of the case by the court below under a series of cases not involving the enforcement of state constitutions or statutes or state policy at all.[25]

---

24. Cumberland Telephone & Tel. Co. v. Louisiana Public Service Commission, 1922, 260 U.S. 212, 216, 43 S.Ct. 75, 76, 67 L.Ed. 217.

25. Phillips v. United States, 1941, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800; Ex parte Buder, 271 U.S. 461, 46 S.Ct. 557,

70 L.Ed. 1036; Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189; Gully v. Interstate Natural Gas Co., 292 U.S. 16, 54 S.Ct. 565, 78 L.Ed. 1088; California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323.

The Phillips case will be used to point out the inapplicability of all of these cases. There the Governor of Oklahoma had obtained an ex parte order from a state court restraining federal officials from proceeding with work under a federal statute. The Governor did not essay to act under any state statute. The language of the decision demonstrates that the case does not at all water down the doctrine of the Stratton and like cases supra:

"It is a matter of history that this procedural device was a *means of protecting the increasing body of state legislation* regulating economic enterprise from invalidation by a conventional suit in equity * * *.

"To bring this procedural device into play * * * requires a suit which seeks to interpose the Constitution against enforcement of a state policy, whether such policy is defined in a state constitution or in an ordinary statute or through the delegated legislation of an 'administrative board or commission'. The crux of the business is a procedural *protection against an improvident state-wide doom by a federal court of a state's legislative policy*. This was the aim of Congress and this is the reconciling principle of the cases. * * *

"The special procedure [under 28 U.S.C.A. 2281] only attends 'the application for' an interlocutory injunction restraining enforcement of a statute. In other words, the complainant must seek to forestall the demands of some general state policy, the validity of which he chal-

lenges. * * * What is here challenged is a single, unique exercise of these prerogatives of his office." [26]

The Supreme Court, itself, pointed out the difference between the Stratton case and others like it and the Phillips case in the Query case, Query v. U. S.: [27]

"Here a substantial charge has been made that a state statute as applied to the complainants violates the Constitution. Under such circumstances we have held that relief in the form of an injunction can be afforded only by a three-judge court pursuant to Section 266 [now 28 U. S.C.A. 2281]. Stratton v. St. Louis S. W. Ry. Co., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135; Ex parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249. And this is not, like Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800, a case in which the state officials threatened to engage in conduct which *state law could not reasonably be construed to authorize.*"

As stated, appellee relies upon this line of cases holding that a District Judge may look to the complaint and ascertain whether the complaint charges substantially that the statute behind the officers' action is unconstitutional; if the complaint fails to state a case of unconstitutionality, a federal question is not raised, and a single judge may dismiss the complaint. That is quite a different course of action from the one here invited where a single district judge is called upon to strike down a state statute as unconstitutional. He has no jurisdiction to do that.[28]

26. Disconnected excerpts taken from 312 U.S. at pages 250–253, 61 S.Ct. at pages 483–484.

27. 316 U.S. 486, 490, 62 S.Ct. 1122, 1124, 86 L.Ed. 1616.

28. In other words, a District Judge may say to himself, "This complaint does not raise a substantial federal question and I will dismiss it". But he may not say to himself, "These pleadings reflect that the State Official is claiming to act un-

der a state statute, but I can see that the state statute is unconstitutional and I will not honor his claim but will enjoin him from the threatened act." There is no case hinting that the District Judge has any such power and it is unthinkable that state action should be subjected to such arrest and nullification by every single District Judge. Such is the teaching of such cases as Ex parte Metropolitan Water Co., 220 U.S. 539, 31 S. Ct. 600, 55 L.Ed. 575; Ex parte North-

(b) The law being thus plain, it remains but to test whether this action substantially involves an effort to prevent the enforcement by the Board of Supervisors of the Constitution or statutes of Louisiana. According to appellee's complaint, his argument before this court on the former appeal, and his argument on the present appeal, he does attack action by that Board as being under color of the Lousiana Constitution. Under the argument made by appellee in his Petition for Certiorari to the Supreme Court of the United States following our former decision,[29] and a portion of the oral argument presented in this hearing, appellee is making no such attack. Under those circumstances it is likely that the factual situation can be stabilized and understood only if clarified at the hearing by the District Court.

Ordinarily the averments of the complaint control what is involved in a civil action. "The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. Mosher v. Phoenix, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L.Ed. 148; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062." [30]

In the complaint appellee definitely avers that the appellants were acting under color of the Louisiana Constitution.[31] The complaint, moreover, contains the definite charge that Title 28, Section 2281 is invoked: "The jurisdiction of this court is also invoked under Title 28 United States Code, Section 2281. This is an action for an interlocutory injunction and a permanent injunction restraining the action of officers of the State of Louisiana in the enforcement of statutes of the State of Louisiana * *."

But the complaint also points out, as the constitutional provision under which the action is obviously brought, Article XII, Section 1 of the Constitution of Louisiana of 1921, LSA, providing: "Separate free public schools shall be maintained for the education of white and colored children between the ages of six and eighteen years". It is doubtful if the averments of the complaint demonstrate clearly that this constitutional provision applies to appellee. Nevertheless, appellee manifestly contended from the outset that it did so apply, and resisted vigorously the effort of appellants on the former appeal to induce this court to hold that, under the complaint, the provisions of 28 U.S.C.A. § 2281 should be followed and a three-judge court convened for the hearing of the case. Of course, that is what we did hold on the former appeal.[32]

After we had held that the court below committed error in not following the

ern Pacific Ry. Co., 280 U.S. 142, 50 S.Ct. 70, 74 L.Ed. 233; California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323, and others cited in the briefs.

29. 207 F.2d 807.

30. Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152.

31. Here are portions of Paragraphs 8 and 13 of the complaint:

"Defendant, Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College, acting as an administrative board or commission of the State of Louisiana *under statutes of said State*, has made and established an order excluding, because of their race or color, plaintiff and all other Negroes otherwise qualified, residing in the State of Louisiana, from all colleges, and undergraduate divisions of the Lou-

isiana State University and Agricultural and Mechanical College."

"Plaintiff is informed and believes, and therefore alleges upon information and belief, *that but for the laws of the State of Louisiana set forth in paragraph 7 hereof*, defendants would not have established and would not be enforcing or executing the order set forth in paragraph 8 hereof, and would not have pursued and would not be pursuing the policy, practice, custom and usage of denying his admission because of his race, and would not have deprived and would not continue to deprive plaintiff, and other Negroes similarly situated, of his or their rights secured by the Constitution and laws of the United States, and hereinbefore and hereinafter more fully set forth."

32. 207 F.2d 807.

prayer of the complaint and organizing a three-judge court, appellee reversed his position in his Petition for Certiorari to the Supreme Court. The entire burden of that petition and the argument presented with it was that appellee had abandoned his claim as set forth in his complaint after the District Judge had held otherwise. Here is appellee's attitude as taken before the Supreme Court of the United States in his Petition for Certiorari:

"The District Judge, however, taking the view that a three judge court was not required, ordered the case set down for hearing before him sitting alone. Petitioner abandoned his claim to a hearing before a specially constituted federal court as required under Title 28 U.S.C., Section 2281, and proceeded without protest to a hearing on the motion for preliminary injunction. No proof tending to establish a claim of the unconstitutionality of segregation *per se* was submitted. Rather the evidence dealt solely with whether the educational opportunities, offerings and facilities at Southern University, the state supported institution of higher learning for Negroes, were equal or substantially equal to those available at Louisiana State University."

Appellee specified error in his Petition for Certiorari, claiming that this court had erred in holding that he "had not waived and abandoned his right to a hearing before a District Court of three judges". Within the ambit of that petition alone, the conclusion is inescapable that appellants had not acted pursuant to the Louisiana Constitution in denying appellee entrance to L.S.U., and, therefore, a three-judge court was not called for.

But, under the inconsistent positions above outlined, we are not permitted to limit our consideration to the position taken by appellee in his Petition for Certiorari. Moreover, in his printed brief before this court in the present hearing, appellee argues that the decision of the lower court ought to be affirmed because he claims, in part, that the entire state policy as fixed by the Louisiana Constitution is in violation of the federal Constitution, and thus he brings himself squarely back under the provisions of 28 U.S.C.A. § 2281. This excerpt from his brief sets forth this attitude: "There is no longer any doubt that a state policy maintaining largely segregated public educational facilities is contrary to the constitutional mandate of the Fourteenth Amendment. * * * The Supreme Court has settled the question and the lower federal courts must now follow the Supreme Court's formula." That position is sought to be supported by the Phillips case and the other cases listed in Note 25 supra.

It is not possible, therefore, to determine with any degree of certainty whether the pleadings and the written statements of appellee do actually seek to stop by injunction state action on the part of appellants essaying to act under the protection of the Louisiana Constitution. We have recently given expression to the universal rule that " 'cases are generally to be tried on the proofs rather than the pleadings' ",[33] and this brings us to the error of the court below which pervades all the others—its failure to enter findings of fact and conclusions of law.

## IV.

Rule 52(a) F.R.C.P. reads in part as follows: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of appropriate judgment; and in *granting* or refusing *interlocutory injunctions* the court *shall similarly set forth* the findings of fact and conclusions of law which constitute the *grounds of its action*." In granting the interlocutory injunction which forms the subject of this appeal, the court below did not follow the plain

33. Des Isles v. Evans, 5 Cir., 1952, 200 F.2d 614, 616.

requirements of that rule.[34] At the very least, therefore, we should reverse its judgment and remand for compliance with this rule.

The findings and conclusions of the court below would have to encompass all of the issues involved in the case as presented by the pleadings. Our reversal on the former appeal was a general reversal, and the Supreme Court merely vacated that judgment. If the Supreme Court had thought that the District Court had nothing but the perfunctory duty of reinstating the injunction, it would have been simple to reverse our decision with directions that the judgment of the District Court be reinstated. But the Supreme Court did not do that. The entire case was sent back to this court and by us to the District Court, and it was the duty of that court to proceed to a full consideration of all issues, and to enter its findings and conclusions on the entire case. We expressed the general rule in Roth v. Hyer, 5 Cir., 1944, 142 F.2d 227, the eighth syllabus, reading thus:

"Generally, when a case is reversed and remanded for further proceedings, it goes back to trial court on all issues as if former trial had not taken place, in absence of direction limiting new trial to particular issues".[35]

In the present situation, of course, there is all the greater reason for find-ings by the District Court. The issue is a broader issue than when it was presented to the lower court before. The District Court is now called upon to consider questions of policy as well as of law, to bring to bear upon the perplexing problems of this case the thinking and the point of view of the section where the court sits; and to enter a decree representing at once justice to appellee and justice to L. S. U. and preserving the welfare and best interests of all of the citizens of the section to which the controversy belongs.

It may be that appellee will stand to the position he took in his Petition for Certiorari to the Supreme Court and upon which he got the case sent back, and may amend his pleadings so as to disavow authoritatively any attack upon action of state officers based upon constitutional mandate. Such a binding declaration would dispose of at least the one problem of the three-judge court, which, without it, must remain in the case. The trial court has ample powers to require appellee to state his position with certitude.

Findings by the District Court are of unusual importance here also, because a new question of paramount importance is presented upon which the parties and the public generally are entitled to be enlightened and instructed.

The majority pretermits all of these questions. To do so, in my opinion, is to

---

34. "It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure." Mayo v. Lakeland Highlands Canning Co., 1940, 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774. To the same effect is our case, Selby, Oil & Gas Co. v. R. R. Comm. of Texas, 5 Cir., 1942, 128 F.2d 334, 337. See also: Public Service Commission of Wisconsin v. Wisconsin Telephone Co., 1933, 289 U.S. 67, 69, 53 S.Ct. 514, 77 L.Ed. 1036, and Bowles v. Russell Packing Co., 7 Cir., 1944, 140 F.2d 354, 355, 5 Moore, Par. 52.06[2], p. 2662.

35. The rule is thus stated in 5 C.J.S., Appeal and Error, § 1991, p. 1554: "All issues open for consideration on the retrial must be proved by evidence produced in that trial, for the *evidence introduced upon the former trial is not a part of the record* in the sense that it may be considered on the second trial without being offered in evidence; and a decision by the appellate court that the proof made on the former trial of certain facts is sufficient to establish a particular issue *does not do away with the necessity for reoffering the proof on those facts on the second trial* * * *."

See also: United States v. Iriarte, 1 Cir., 1948, 166 F.2d 800, and Commercial National Bank in Shreveport v. Parsons, 5 Cir., 1944, 144 F.2d 231.

disregard the mandate of the Supreme Court and to fail to accept and perform the responsibility which is ours. I am compelled, therefore, to dissent.

RIVES, Circuit Judge (specially concurring).

I would speak briefly, for myself alone, in addition to the short opinion of the Court originally prepared by me as a "Per Curiam".

I do not understand that the district court had to begin anew as if its judgment had been reversed and the cause remanded. The Supreme Court vacated the judgment of this Court, not that of the district court. We simply remanded the case to the district court for consideration in the light of the segregation cases and conditions that now prevail. The district court had already conducted a full hearing at which all of the evidence offered by either party had been received, and thereafter the court had made complete, and even elaborate, findings of fact and conclusions of law. See 116 F.Supp. 248. It is not my understanding that all of that had to be repeated.

As to whether a three-judge district court was required, my views were expressed in a dissenting opinion on the first appeal in this case, 207 F.2d 810, et seq. As there shown, a three-judge court is authorized only when the claim of unconstitutionality presents a substantial federal question. It has long been settled that a question of constitutionality may be plainly unsubstantial "because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' Levering & Garrigues Co. v. Morrin, supra [289 U.S. 103, 105]; 53 S.Ct. 549; Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482; McGilvra v. Ross, 215 U. S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95." Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152. A federal question may become unsubstantial by virtue of an intervening Supreme Court decision, California Water Service Co. v. Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323. The Supreme Court has now made its meaning unmistakably clear that it had declared "the fundamental principle that racial discrimination in public education is unconstitutional," and that, "All provisions of federal, state, or local law requiring or permitting such discrimination must yield to this principle." Brown v. Board of Education, 349 U.S. 294, 298, 75 S.Ct. 753, 755. After that decision, coupled with the earlier opinion that, "Separate educational facilities are inherently unequal", Gebhart v. Belton, 347 U.S. 485, 74 S.Ct. 692, it seems to me that no substantial federal question is presented as to the unconstitutionality of the provision of the Louisiana State Constitution reading:

"Separate free public schools shall be maintained for the education of white and colored children between the ages of six and eighteen years."

The Supreme Court has already passed on the question. The federal question presented is no longer "one which requires analysis and exposition for its decision," and it is therefore frivolous. Milheim v. Moffat Tunnel District, 262 U.S. 710, 716, 45 S.Ct. 694, 696, 67 L.Ed. 1194.

The meaning of the general expression, "conditions that now prevail" is made more explicit, I think, by the subsequent opinion of the Supreme Court formulating the decrees in the Segregation Cases. Brown v. Board of Education, 349 U.S. 294, 299, 300, 301, 75 S.Ct. 753. "Conditions that now prevail" are well known in a general way, and certainly there is no presumption that judges are less informed than other persons. The Supreme Court did not require that testimony be taken in all cases as to such conditions. Hearings of such breadth could well become interminable. A large measure of discretion, coupled with recognition of ju-

dicial knowledge, must be vested in the district judge.

The doctrine of "separate but equal" was displaced because the Supreme Court held that, "Separate educational facilities are inherently unequal." 347 U.S. 495, 74 S.Ct. 688. If such facilities are actually unequal in other ways in addition to being separate, then we judicially know, certainly in the case of a college as distinguished from the grade public schools, that there are no "conditions that now prevail" which would authorize denying equal opportunities to all students, regardless of race. Otherwise to construe the meaning of the term would be to hold that the Supreme Court placed obstacles in the path of Negro students in addition to those they already faced under the "separate but equal" doctrine, that it turned the clock backward instead of forward. I think that the judgment of the district court was right.